# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| TERRI M. WEDDLE and ) | |
| J. GREGORY WEDDLE, ) | Case No. 05-21089-TLM |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | MEMORANDUM OF DECISION |
| FORD ELSAESSER, TRUSTEE ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adv. No. 06-7015-TLM |
| v. ) | |
| ) | |
| COUGAR CREST LODGE, L.L.C., ) | |
| an Idaho limited liability company, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**INTRODUCTION**

Ford Elsaesser ("Plaintiff") is the chapter 7 trustee for the estate of J. Gregory Weddle and Terri Weddle ("Debtors"). Plaintiff commenced this adversary proceeding to establish that Cougar Crest Lodge, LLC ("Defendant") received a preferential transfer.

Presently before the Court are Defendant's motion for summary judgment, Doc. No. 12, and Plaintiff's cross-motion for partial summary judgment. Doc. No. 14. Having reviewed the motions and supporting affidavits and having considered the parties' arguments in briefing and at hearing, the Court determines Plaintiff's

MEMORANDUM OF DECISION - 1

motion will be denied, and Defendant's motion will be granted in part.

**DISCUSSION AND DISPOSITION**

    **A.    Summary judgment standards**

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81, 03.4 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

The Court does not weigh evidence in resolving such motions but, rather, determines only whether a material factual dispute remains for trial. *Leimbach*, 302 B.R. at 81, 03.4 I.B.C.R. at 215 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992).

    **B.    Nature of the dispute**

To avoid a transfer as preferential, a trustee must prove all the elements of § 547(b)[1] by a preponderance of the evidence:

---

[1] Unless otherwise indicated, all references to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, are to the Code prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23, as Debtors' bankruptcy case was filed before BAPCPA's effective date (generally October 17, 2005).

MEMORANDUM OF DECISION - 2

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of any interest of the debtor in property –
>
>> (1) to or for the benefit of a creditor;
>>
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>>
>> (3) made while the debtor was insolvent;
>>
>> (4) made –
>>
>>> (A) on or within 90 days before the date of the filing of the petition; or
>>>
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider, and
>>
>> (5) that enables such creditor to receive more than such creditor would receive if –
>>
>>> (A) the case were a case under chapter 7 of this title;
>>>
>>> (B) the transfer had not been made; and
>>>
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

*See Crawforth v. H & H Enterprises, LLC (In re Larison)*, 05.3 I.B.C.R. 74, 76 (Bankr. D. Idaho 2005) (citing *Elsaesser v. Central Pre-Mix Concrete Company (In re Pioneer Construction, Inc.)*, 01.2 I.B.C.R. 66, 67 (Bankr. D. Idaho 2001)).

Plaintiff alleges Defendant received a preferential transfer when it recorded judgments it recovered against Debtors and thus obtained a lien on Debtors' real property under Idaho Code § 10-1110.  *See Strickland v. Green (In re Green)*, 98.1 I.B.C.R. 29, 30 (Bankr. D. Idaho 1998) (noting that recordation of a state court

MEMORANDUM OF DECISION - 3

judgment and concurrent creation of a lien under I.C. § 10-1110 constitutes a transfer for preference purposes).

### C.  Undisputed facts

The parties agree there is a determinative question of law that the Court can properly resolve upon summary judgment. They present the Court with the following undisputed facts:

- Debtors are two members of the Defendant limited liability company and each holds a 5% ownership interest in 100 common units. Foster Manning, Debtor Terri Weddle's father, is the only other member of Defendant. Manning holds the remaining 90% interest in the common units and 100% interest in 4,450 preferred units. *See* Doc. No. 12, Ex. A at attach Ex. A.

- Defendant owned and operated a lodge in Coeur d'Alene, Kootenai County, Idaho.

- Defendant's July 28, 2000 operating agreement names Manning as Defendant's sole manager. *See* Doc. No. 12, Ex. A at 6.03.

- As of April, 2001, Defendant's articles of incorporation were amended. Consistent with the operating agreement, Debtors were deleted as managers and the amended articles reflect Manning as the sole manager of the LLC. *See* Doc. No. 12, Ex. B.

- Debtors remained employees of Defendant, and they managed the daily operations of the lodge.[2] *See* Doc. No. 12, Exs. C, D.

- On May 28, 2003, Debtors borrowed $175,000.00 from, and personally signed a promissory note payable to, the MacDonald Family Limited Partnership. This note was secured by a deed of

---

[2] Plaintiff appears to argue that Debtors were managers of the LLC. However, Plaintiff's use of the term "managers" to describe Debtors' duties under their employment agreement is not synonymous with "manager" of the LLC within the use of that term in the operating agreement, the articles of incorporation, or chapter 6 of title 53 of the Idaho Code. The Court views Debtors' "management" role in the daily operation of the lodge as separate and distinct from management of the LLC.

MEMORANDUM OF DECISION - 4

        trust on the property on which the lodge was located ("Lodge Property"). *See* Doc. No. 12, Exs. E, F.[3]

- On October 10, 2003, Manning, as manager of Defendant, gave Debtors thirty days notice that their employment was being terminated. *See* Doc. No. 12, Ex. G.

- On March 11, 2004, Defendant purchased the promissory note and deed of trust on the Lodge Property from the MacDonald Family Limited Partnership. *See* Doc. No. 12, Ex. H.[4]

- On March 15, 2004, Defendant, through counsel, informed Debtors of its purchase of the MacDonald note, and informed Debtors of their delinquency in payment of that note. *See* Doc. No. 12, Ex. I.

- On April 15, 2004, Defendant initiated a state court lawsuit against Debtors for breach of the promissory note. *See* Doc. No. 12, Ex. J. Debtors answered and defended the state court complaint, Doc. No. 12, Ex. K. Summary judgment was ultimately granted in favor of Defendant and a judgment was entered against Debtors in the amount of $190,638.13. *See* Doc. No. 12, Ex. L.

- Defendant recorded its judgment on December 29, 2004 in the Kootenai County real property records. *Id.*

- The state court awarded Defendant a separate fee and cost judgment of $14,084.15. *See* Doc. No. 12, Ex. M. That judgment was recorded in the Kootenai County real property records in early February, 2005.

- Debtors personally purchased property located in Kootenai County, identified in their bankruptcy schedules as the "Cougar Gulch"

---

[3] The Lodge Property was, in May 2003, titled in Debtors' names. (Terri Weddle testifies in her affidavit that while Defendant actually acquired the Lodge Property, using funds from or routed through a company owned by Manning's wife, title was placed in Debtors' names "for business and tax reasons." She testifies that Debtors personally needed funds and believed they effectively had "sweat equity" in the Lodge Property from their labors, justifying their encumbering the property in such a manner.) Debtors' interest in the Lodge Property was transferred to Defendant by quit claim deed on September 17, 2003. *See* Doc. No. 17 at 5.

[4] As of this date, Defendant owned the Lodge Property, *see* note 3 *supra*. The deed of trust is not at issue in this litigation.

MEMORANDUM OF DECISION - 5

>    Property, with the proceeds of the MacDonald Loan. In addition, they owned a home in Couer d'Alene, ID in Kootenai, County (together "Debtors' Properties"). *See* Case No. 05-21089, Doc. No. 9 at schedule A.[5]

- Debtors filed their bankruptcy petition on July 15, 2005, some seven months and five months from the recording of the respective judgments. *See* Case No. 05-21089-TLM, Doc. No. 1.

### D. Issue presented

The parties appear to agree that, because the recording of the judgments at issue in this case, and thus the creation of the liens on Debtors' Property under Idaho Code § 10-1110, occurred more than 90 days prior to Debtors' bankruptcy petition, Plaintiff must prove Defendant is an insider in order to prevail on his preference action. *See* § 547(b)(4)(B).[6] The cross-motions for summary judgment address this issue.

### E. Disposition

#### 1. Statutory insider

Insider is defined under § 101(31) of the Code. As to individual debtors

---

[5] Though the source of the funds used to purchase the Cougar Gulch Property was agreed, the parties did not specify when Debtors' Properties were acquired.

[6] The parties appear to agree that the transfers occurred more then 90 days prior to Debtors' July 15, 2005 bankruptcy filing. However, they failed to provide the Court with the exact dates the subject transfers occurred. The parties focus on the dates Defendant's judgments against Debtors were recorded in the Kootenai County real property records. However, if either of Debtors' Properties was acquired after the judgments were recorded, the date(s) of acquisition become relevant to the timing of the preference analysis. *See* § 547(e); *Green*, 98.1 I.B.C.R. at 30. The dates of such acquisition were not provided, and the parties did not expressly agree that such properties were owned prior to the dates Defendant recorded its judgments. Nonetheless, the Court can and will analyze the parties' motions regarding Defendant's insider status. But, even though the Court concludes *infra* that Defendant prevails on that issue, the Court cannot dismiss the case without proof that the transfers occurred more than 90 days prior to July 15, 2005.

MEMORANDUM OF DECISION - 6

like the Weddles, insider includes:

> (i) relative of the debtor or of a general partner of the debtor;
> (ii) partnership in which the debtor is a general partner;
> (iii) general partner of the debtor; or
> (iv) corporation of which the debtor is a director, officer, or person in control[.]

Section 101(31)(A).

Plaintiff argues Defendant is an insider within this statutory definition because Debtors were "person(s) in control" of the Defendant limited liability company. Because neither membership nor management or control of a LLC is specifically addressed in § 101(31), Plaintiff would have the Court apply by analogy the insider definition concerning corporations found in § 101(31)(A)(iv).

In advancing such an argument, Plaintiff relies on *In re Barman*, 237 B.R. 342 (Bankr. E.D. Minn. 1999). Whatever the merits of that decision, in this Circuit, such reliance is misplaced because the Ninth Circuit Bankruptcy Appellate Panel has instructed that:

> in light of the conclusive presumption of preferential treatment that arises from a determination that an entity is a per se insider, there is no justification for expanding the definition of per se insider beyond what is plainly contained in the statute. To do so would result in adding language to the statute that is not there, which it is not within the province of the court to do.

*Enter. Acquisition Partners, Inc.*, 319 B.R. 626, 632 (9th Cir. BAP 2004). Since a LLC of which debtor is a member, director, officer or person in control is not among the list of per se, statutory insiders, Plaintiff's argument fails.

MEMORANDUM OF DECISION - 7

## 2.      Alter ego (veil piercing) statutory insider

In the alternative, Plaintiff argues that Defendant is a statutory insider on the theory that Defendant's managing member, Manning, operates the LLC as his alter ego, thus supporting veil piercing. In Plaintiff's view, if the LLC and Manning are treated as one and the same, Defendant becomes a statutory insider since Manning – father of Terri Weddle – is clearly a per se insider under § 101(31)(A)(i).[7]

Under Idaho law, courts may disregard the corporate entity under limited circumstances: first, "there [must] be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and second, failure to treat the acts of the corporation as those of the individual will lead to an inequitable result, "sanctioning a fraud or promoting injustice." *Alpine Packing Co. v. H.H. Keim Co.*, 828 P.2d 325, 326 (Idaho Ct. App. 1991); *see also Hutchison v. Anderson*, 950 P.2d 1275, 1279 (Idaho Ct. App. 1997).

While Idaho cases addressing veil piercing deal with corporations, this Court concludes Idaho courts would equally apply such an equitable principle to the misuse or abuse of a limited liability company. *See Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 863 n.6 (Bankr. N.D. Ill. 2006) (noting that "limited

---

[7] Numerous questions arise with this unique use of alter ego and veil piercing. As noted in *Enterprise Acquisition Partners*, "Ordinarily, the corporate veil is pierced so that the shareholder can be held liable for the obligations of the corporation. In this case, the alter ego theory is being used in an attempt to hold the corporation liable because of its relationship to the shareholder." 319 B.R. at 633 n.7.

MEMORANDUM OF DECISION - 8

liability companies may be subjected to veil-piercing actions in a way similar to the way corporations are deemed alter egos of their shareholders"); *AE Rest. Assocs., LLC v. Giampietro (In re Giampietro)*, 317 B.R. 841, 845-46 (Bankr. D. Nev. 2004).

### a. First prong: unity of interest

In determining a unity of interest, the Court is instructed to look at several factors, including but not limited to whether there was a lack of corporate formalities, transfer of funds without approval of a director or officer, or disregard for the separateness of a corporation.

Here, Plaintiff offers the affidavit of Terri Weddle. She says her father ran Defendant without regard to any corporate formalities. She alleges that Manning transferred funds from one entity to another without documentation. She says he caused title to the Lodge Property to be placed in Debtors' names though the funds for its purchase came from another entity that was controlled by Manning's wife. She claims Manning made related false statements in Defendant's operating agreement for "tax reasons," such as the assertion that Debtors contributed the property on which the lodge sits.

In contrast, Defendant provides documents such as a formal operating agreement and articles of organization reflecting corporate formalities were followed. Moreover, it appears clear that Manning was Defendant's managing member, with the exclusive ability to make business decisions for Defendant. *See*

MEMORANDUM OF DECISION - 9

Idaho Code § 53-621. Thus Plaintiff's argument that Manning "does not need to consult others when he wants the entity to take action, like say file a lawsuit" is not particularly compelling. That type of control, if given to one manager in the operating agreement, is allowed by law. Here, Manning, as manager of Defendant, initiated a lawsuit against his daughter and son in law, without asking their permission as members of the LLC. But that is an action allowed by statute as well as by Defendant's operating agreement.

While Plaintiff's showing is slim, there may be genuine issues of material fact in dispute.[8] However, this showing addresses only the first prong of the veil piercing analysis, that of unity of interest and ownership. Plaintiff must also demonstrate questions of material fact exist as to the second prong of the veil piercing analysis in order to avoid summary judgment. *See* Fed. R. Civ. P. 56(e) (incorporated by Fed. R. Bankr. P. 7056).

### b.    Second prong: inequitable results

Plaintiff argues that the second prong is met because failure to treat the Defendant entity and Manning as one would result in general unsecured creditors in Debtors' bankruptcy case receiving a significantly smaller distribution from the bankruptcy estate. When presented with the same argument, the BAP stated that:

> there is nothing inherently inequitable about receiving a preferential transfer. Further, we are not willing to say that it is inequitable as a

---

[8] There is not a showing sufficient to support Plaintiff's cross-motion. The question boils down to whether Plaintiff's showing is sufficient to avoid summary judgment in favor of Defendant.

MEMORANDUM OF DECISION - 10

> matter of law for a corporation wholly owned by an insider to receive and retain what would be a preferential transfer within one year before bankruptcy. There must be some facts showing that, in the particular case, recognizing the corporate form would result in inequity.

*Enter. Acquisition Partners*, 319 B.R. at 635.

Plaintiff has not provided anything, apart from its assertion that general unsecured creditors would receive a smaller distribution, to support the second prong of the veil piercing analysis.[9] Defendant has been an operating, legal entity since 2000. It was not shown to have been created by Manning to perpetrate a fraud on its creditors or on creditors of Debtors' estate. For example, Plaintiff did not establish any facts that would lead the Court to believe the LLC was created in order to accept and attempt to shield a preferential transfer.

The Court concludes Plaintiff cannot prevail on its partial summary judgment motion based on the alter-ego theory, nor can it withstand Defendant's motion for summary judgment on this legal issue.

### 3. Non-statutory insider

Plaintiff also argues Defendant is a non-statutory insider. While the Code provides a list of specific, statutorily defined insiders, § 101(31)'s use of the term

---

[9] One of the accepted arguments under the second prong is that the targeted corporation was undercapitalized and thus lacked the resources with which to pay its debts. Plaintiff argues that Manning gave vague answers to questions regarding the capitalization of Defendant and evidenced a willingness to "stretch the boundaries of business law," thus supporting a conclusion that failing to ignore the corporate form would create inequitable results. But Plaintiff at the same time concedes Defendant was not undercapitalized. And Plaintiff has not shown that other alleged facts (such as the contention that Manning used another closely held corporate form, his wife's corporation, to channel funds into Defendant) require the conclusion that inequities would result from recognizing the separateness of Defendant.

MEMORANDUM OF DECISION - 11

"includes" renders the list nonexclusive. *See* § 102(3) (indicating the term "includes" is not limiting). Those who are not per se insiders may still qualify as insiders, but "only if they meet the test for non-statutory insiders, which requires some showing of control of the debtor." *Enter. Acquisition Partners, Inc.*, 319 B.R. at 633.

The BAP held in *Friedman v. Sheila Plotsky Brokers, Ltd. (In re Friedman)*, 126 B.R. 63 (9th Cir. BAP 1991):

> [I]nsider status may be based on a professional or business relationship with the debtor, in addition to the Code's per se classifications, where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties.
> . . .
> The case law that has developed also indicates that not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship.
> . . .
> A common basis for these rulings was the perception that, while a creditor may be in a strong bargaining position in dealing with the debtor, so long as the parties transact their business at arm's length, such circumstances do not necessarily give rise to insider status even though there was some degree of personal relationship with the debtor.
> . . .
> The long term and extensive relationship between the parties [in *Friedman*] does not compel a conclusion that appellees were granted a security interest because of insider status.

126 B.R. at 69-70 (footnotes and citations omitted). *See also Emerson v. Stephenson* (*In re Emerson*), 244 B.R. 1, 31-32 (Bankr. D.N.H. 1999) (considering various factors including closeness of parties and whether transactions were

MEMORANDUM OF DECISION - 12

conducted at arms' length); *Three Flint Hill Ltd. P'ship v. Prudential Ins. Co.* (*In re Three Flint Hill Ltd. P'ship*), 213 B.R. 292, 299-300 (D. Md. 1997) (same); *Miller v. Schuman (In re Schuman)*, 81 B.R. 583 (9th Cir. BAP 1987).

Defendant might be an insider if it had a relationship reflecting an ability to direct Debtors actions or conduct. Defendant undoubtedly had significant knowledge regarding Debtors in the sense that it initially employed them and, after terminating their employment, knew of their financial troubles. Moreover, Defendant's managing member is the father of one of the debtors and such a close relationship may subject transactions between Defendant and Debtors to close scrutiny. *See* 2 Collier on Bankruptcy ¶ 101.31, 101-142. However the existence of such closeness of relationship, or even leverage, does not itself establish an insider status.

A "transferee 'is an insider if, *as a matter of fact*, he exercises such control or influence over the debtor as to render their transaction not arms-length.'" *Enter. Acquisition Partners,* 319 B.R. at 633 n.5 (quoting *In re Schuman*, 81 B.R. at 586) (emphasis added). Under the language of § 101 and § 547(b), the insider status must be evaluated in relation to the *debtors* and at the time of the *transfer*.[10]

Nothing in the undisputed facts supports a finding that, at the time of the transfers, Defendant exercised control or influence over Debtors such as to make

---

[10] Section 547(b)(4)(B) requires that the insider status exist at the time of the challenged transfer. Here that would be at the time the judgment liens attached to Debtors' Properties. *Accord,* 5 Collier at ¶ 547.03[6], 547-41 n. 82 (Alan N. Resnick & Henry J. Sommer, eds., rev. 15th ed. 2005).

MEMORANDUM OF DECISION - 13

the transaction not arms' length. Here, there was an adversarial relationship at the time the judgments were recorded against Debtors. Defendant no longer employed Debtors and had instead initiated a state court lawsuit and pursued it to judgment. Indeed, Plaintiff conceded at hearing that the relationship was adversarial. This was not a voluntary transfer, such as through a deed of trust from Debtors to Defendant. Nor did the parties present anything to suggest that the Debtors' participation in the state court proceeding was in any way collusive. In fact, Debtors actively defended the state court lawsuit. While Plaintiff argues that Defendant was aware of Debtors' precarious financial condition and capitalized on such knowledge, the facts do not show the type of non-arms' length transaction required to determine that Defendant was a non statutory insider at the time it received and filed its judgments.

**CONCLUSION**

The Court determines Plaintiff presented no genuine issue of material fact precluding entry of summary judgment in Defendant's favor on the insider issue. Defendant's motion for summary judgment, Doc. No. 12, will be granted in part, determining it is not an insider, and Plaintiff's motion for partial summary judgment requesting the Court find Defendant to be an insider, Doc. No. 14, will be denied. However, the Court cannot grant the balance of Defendant's motion, and dismiss the case as requested by Defendant, until the record is clarified to reflect that the subject transfers occurred more than 90 days prior to July 15, 2005.

Defendant may submit an appropriate form of order.

DATED: October 5, 2006



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 15